FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y

★ SEP 28 2018 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

RICHARD COLLINS,

                      Petitioner,

        -against-

SUPERINTENDENT GRAHAM,

                    Respondent.

------------------------------------------------------------- x

**MEMORANDUM & ORDER**

15-cv-3686 (ENV) (VMS)

VITALIANO, D.J.

      Petitioner Richard Collins, suffering from a state court conviction, has filed a *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Dkt. No. 1. For the reasons set forth below, the writ is denied and the petition is dismissed.

## Background

      On December 13, 2007, in a White Castle restaurant located at 21-01 Broadway in Astoria, Queens, friends Perickles Vasilaroupolous, Anthony Englesbobb, and Corinthian Brown were playing a children's card game, Yu-Gi-Oh!,[1] as they ate.[2] Dkt. No. 11 at 3, Dkt. No. 11-1 at 39-40, Dkt. 11-3 at 71-73; Dkt. No. 11-5 at 98-100, 141-44. Collins entered the White Castle, placed an order, and quickly provoked a fistfight with Vasilaroupolous by touching the (apparently expensive) cards, taunting Vasilaroupolous by calling him a "pussy," splashing water on him, and throwing a punch at him. Dkt. No. 11-3 at 80-83; Dkt. No. 11-5 at 101-02, 145-47. During the confrontation Collins had provoked, Vasilaroupolous shoved Collins into a corner

---

[1] *See, e.g., Yu-gi-Oh! The Abridged Series – Episode 1, available at* https://www.youtube.com/watch?v=-32NGYLqwAQ&list=PLTagxffHmpfT765 IfQj68dMmfFs3W7s1f (last accessed August 24, 2018).

[2] Because Collins was convicted, the Court recounts the facts in the lights most favorable to the verdict. *See Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

booth, pinned him down, and punched him repeatedly. Dkt. No. 11-3 at 84-85; Dkt. No. 11-5 at 103, 147. After determining that Collins was unarmed, Vasilaroupolous let him go. Dkt. No. 11-3 at 85; Dkt. No. 11-5 at 103, 148.

Freed, Collins immediately stated that he would kill Vasilaroupolous, went to his car, and, proving that his statement was no idle threat, produced a handgun to bring to the showdown. Dkt. No. 11-3 at 87; Dkt. No. 11-5 at 105-07, 149-50. Seeing this, and, sensing that the confrontation would escalate, Vasilaroupolous, understandably, fled after warning his two friends. Dkt. No. 11-3 at 87; Dkt. No. 11-5 at 105-07. Returning to the White Castle, Collins held a gun to Brown's head and demanded his "chain." Brown replied, untruthfully, that he was not wearing a chain. In fact, he was wearing a gold chain with an icon/image of Jesus Christ. Dkt. No. 11-3 at 89-90; Dkt. No. 11-5 at 150-51. Collins then pistol-whipped Englesbobb, and robbed Englesbobb of his chain and wallet. Dkt. No. 16 at 6, ¶ 4; Dkt. No. 11-3 at 99-100; Dkt. No. 11-5 at 153-56. In the commotion, Brown ran out and called 911. Dkt. No. 11-3 at 100. Vasilaroupolous had called 911, as well. Dkt. No. 11-5 at 109-10.

Six months later, Collins was arrested on the strength of (1) DNA matches from his water bottle, a bag of food, and a gun holster he left at the White Castle, Dkt. 11-1 at 41-42, and (2) by having been identified in a lineup by Vasilaroupolous, Englesbobb, and Brown. Dkt. No. 16 at 6, ¶ 4; Dkt. No. 11-1 at 74-75; Dkt. No. 11-3 at 110; Dkt. No. 11-5 at 113-14. Collins was charged with, among other crimes, robbery in the first degree, N.Y. Pen. L. § 160.15[4], and two counts of assault in the third degree, *id.* § 120.00[1]. Dkt. No. 1 at 1-2; Dkt. No. 16 at 7, ¶ 5. He was tried in Queens County Supreme Court before Justice Ronald D. Hollie and a jury. *See, e.g.,* Dkt. No. 11-9 at 1.

During the trial, Brown, (Dkt. Nos. 11-3 & 4), Vasilaroupolous (Dkt. No. 11-5), and Englesbobb (Dkt. Nos. 11-5-7), all testified, and related the account set forth above. During Englesbobb's cross-examination, defense counsel attempted to impeach him with what he proffered as a prior inconsistent statement. The prosecutor objected on the ground the statement had not been sworn or verified by Englesbobb. The objection was sustained, but defense counsel successfully impeached Englesbobb using his grand jury testimony. Dkt. No. 11-7 at 27-29, 40-42.

Significantly, and outside the norm for criminal trials, Collins did take the stand to testify in his own defense. On cross-examination, the prosecutor drew out his pre-arrest silence, his never filing a police complaint, despite direct testimony as to his self-defense evidenced by his claim of injuries inflicted on him by Vasilaroupoulous. Dkt. No. 11-8 at 32-33, 39, 42. Summations would bring few surprises. For example, the prosecutor returned to Collins's admitted pre-arrest silence, to cast doubt on his claim, and overall credibility, that he was the victim of a "brutal beating."[3] Dkt. No. 11-8 at 114, 121-22.

Jury deliberations were prolonged. In their ninth note to the court, the jury advised that they had reached a verdict on the two third degree assault counts, but not the counts charging attempted robbery in the first degree and robbery in the first degree. The trial court gave an *Allen* charge. Dkt. No. 11-9 at 50-54. The next day, the jury sent a tenth note, asking for the entire testimony of Collins and two other witnesses. The trial court advised that it would take some time to locate the testimony of all three men, but that the third witness's testimony would be read back then because it was available. Dkt. No. 11-9 at 66-69. Defense counsel made no

---

[3] Consistent with effective representation, defense counsel objected several times during this summation. *See, e.g.,* Dkt. No. 11-8 at 125, 126, 126-27.

objection. *Id.* at 69. After seven hours, the second witness's testimony was located and read back to the jury. *Id.* at 70. Again, counsel did not object. *Id.* at 71-72. Subsequently, the jury sent notes 15 and 16, stating, respectively, that they no longer needed Collins's testimony, and that they had reached a verdict. *Id.* at 72.

When they returned to open court to report their verdict, the jury informed the Court that they had convicted Collins of the first-degree robbery and attempted robbery charges and one of the assault charges, but had acquitted him of the other assault charge.[4] Dkt. No. 11-9 at 73-74. On November 10, 2009, Collins was sentenced as a second violent felony offender to a prison term of 18 years for the robbery charge and a concurrent one year term for the assault charge. Dkt. No. 1 at 7, ¶ 7; Dkt. No. 11-9 at 88.

With the assistance of counsel, Collins appealed to the Appellate Division, Second Department, raising five grounds for relief: (1) violation of his right to fair jury deliberations due to the failure to comply with the jury note asking for his testimony; (2) improper cross-examination of him regarding his pre-arrest silence; (3) trial error disallowing impeachment of a key prosecution witness; (4) ineffective assistance of counsel; and (5) excessiveness of the sentence. *Id.* at 3; Dkt. No. 11. at 5-6.

His arguments found no traction. The Second Department affirmed the convictions and sentence, on August 7, 2013. *People v. Collins*, 109 A.D. 3d 482, 970 N.Y.S. 2d 80 (2d Dep't 2013). The Appellate Division found that Collins had waived his jury deliberations claim, and, that, even if he had not, the claim was meritless. *Id.* at 482, 80. Similarly, the court determined

---

[4] Mid-way through the trial, the court offered Collins the opportunity to take a plea ("over the objections of the People") to a minimum sentence of 10 years on the top count of the indictment. Dkt. No. 11-4 at 125-26; Dkt. No. 11-5 at 16. The offer was declined.

that his prosecutorial misconduct claims were unpreserved, and that, in any event, whatever error might have been committed by the trial court in failing to redress them was harmless. *Id.* Turning to his impeachment claim, the Appellate Division determined that Collins had waived it by failing to object, and, again, that the underlying claim was meritless, because the trial court "properly refused to admit the criminal complaint into evidence as a prior inconsistent statement . . . absent proof that the complainant signed, prepared, or verified the accuracy of the complaint." *Id.* at 482-83, 80. The Appellate Division also determined that Collins had not been provided ineffective assistance of counsel, and that the sentence imposed was not excessive. *Id.* at 483, 80.

Collins sought leave to appeal to the New York Court of Appeals, reiterating the same grounds advanced before the Appellate Division, Dkt. No. 11 at 122-29, which declined to grant him leave, on June 27, 2014. *People v. Collins*, 23 N.Y. 3d 1019, 16 N.E. 3d 1281, 992 N.Y.S. 2d 801 (table) (2014). *Id.* Collins then filed a timely petition seeking a writ of habeas corpus. It brings the same claims he raised before the Second Department. Dkt No. 1 at 1, 6, 7, 9, 15.

Standard of Review

Engrained in our process for almost a quarter century, federal habeas relief is governed by the Anti-terrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), which provides that a writ of habeas corpus shall not issue with respect to any claim of a prisoner in state custody that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or, (2) "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d); *see also Gutierrez v. McGinnis*, 389 F.3d 300, 304 (2d Cir. 2004) (describing

this standard as "AEDPA deference"). This deferential review is accorded to any state court decision disposing of a state prisoner's federal claim on the merits, regardless of whether that court gives reasons for its determination or refers to federal law in its decision. *Harrington v. Richter*, 562 U.S. 86, 98-99, 131 S. Ct. 770, 784-85, 178 L. Ed. 2d 624 (2011); *see also Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

"Section 2254(d) reflects the view [of Congress] that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. 86 at 102-03 (citation and internal quotations omitted). AEDPA review "demands that state-court decisions be given the benefit of the doubt." *Hardy v. Cross*, 565 U.S. 65, 66, 132 S. Ct. 490, 491, 181 L. Ed. 2d 468 (2011) (citation and internal quotations omitted). Where AEDPA deference applies, "[a] state court's findings of fact are 'presumed to be correct' unless rebutted 'by clear and convincing evidence.'" *Drake v. Portuondo*, 553 F.3d 230, 239 (2d Cir. 2009) (quoting 28 U.S.C. § 2254(e)(1)).

For the purposes of federal habeas review, "clearly established federal law" refers to the holdings, as opposed to *dicta*, of Supreme Court decisions that are controlling law at the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523, 146 L. Ed. 2d 389 (2000). A state court decision is "contrary to clearly established federal law," within the meaning of § 2254(d), if it contradicts relevant Supreme Court precedent or arrives at a different conclusion based on "materially indistinguishable" facts. *Id.* at 405-06. A state court decision is classified as one resting on an "unreasonable application" of federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Even erroneous state court decisions, then, if deemed reasonable, will survive habeas review. *Id.* at

411. But, there is a caution: the state court decision need not be "so far off the mark as to suggest judicial incompetence" before habeas relief may be granted. *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (citation omitted). "[A] federal court may reverse a state court ruling where it was 'so lacking in justification that there was . . . [no] possibility for fair-minded disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (quoting *Harrington*, 562 U.S. at 103). Still, as the Supreme Court has underscored, "[i]f this standard is difficult to meet [before federal habeas relief may be awarded]– and it is – that is because it was meant to be." *Burt v. Titlow*, 571 U.S. 12, 20, 134 S. Ct. 10, 16, 187 L. Ed. 2d 348 (2013) (citation and internal quotations omitted).

AEDPA superimposes yet another obstacle to federal habeas relief, where a habeas claim was denied by the state court on independent state law procedural grounds. A federal petitioner can only overcome such a procedural bar by either "show[ing] cause for failing to [comply with the state procedural requirement] and prejudice" flowing from it, or, by "show[ing] that a fundamental miscarriage of justice would result from a failure to entertain the claim." *McCleskey v. Zant*, 499 U.S. 467, 494-95, 111 S. Ct. 1454, 1470, 113 L.Ed.2d 517 (1991).

To demonstrate cause for a procedural default, a petitioner must "show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim in state court." *Id.* at 493 (citing *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Such "objective factors" can include "interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to counsel." *McCleskey*, 499 U S. at 493-94 (citation and internal quotations omitted). In fact, a meritorious ineffective assistance of counsel claim can serve as cause to excuse a procedural default. *Tavarez v. Larkin*, 814 F.3d 644, 650

(2d Cir. 2016). Once cause has been demonstrated, the petitioner must show "actual prejudice resulting from the errors of which he complains." *McCleskey*, 499 U S. at 494 (citation and internal quotations omitted).

Alternatively, a petitioner can try to meet the much higher burden of showing that upholding the state-court procedural bar would result in a "fundamental miscarriage of justice," but such a showing is limited to "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." *Id.*

## Discussion

### I.  Jury Deliberations

Collins contends that the jury deliberations were impermissibly tainted by the trial court's failure to suspend deliberations until it could provide a read back of his testimony as requested in the jury note, but were permitted to continue deliberating during those seven hours, as the search was made for the testimony. Dkt. No. 1 at 6. The deliberations tainted by those errors, he contends, violated his right to a fair trial. There is no question that Collins sought to raise this claim before the Second Department, R. at 28, which rejected it as defaulted for failure to timely object at trial.

Answering Collin's petition on behalf of respondents, the Queens District Attorney offers a grab bag of arguments. The People's principal argument is that this claim is flat out procedurally defaulted. They go on to argue that Collins cannot excuse the procedural default. They also contend that the jury note claim is not cognizable on federal habeas review, that, even if federal claims are raised by it, the trial court's rejection of them was not contrary to federal law; and, finally, that any error is harmless. Dkt. No. 16 at 17-41.

No new ground is paved here. Peering at the substance of the claim, New York law

clearly requires the trial judge to give notice to both the prosecutor and defendant when there is a jury note. *See* N.Y. Crim. P.L. § 310.10. More pertinent here, the New York Court of Appeals has made clear that, where a trial court reads the note in open court while all parties are present, and defense counsel does not contemporaneously object to the court's handling of the note, the claim is unpreserved and therefore, waived. *People v. Starling*, 85 N.Y. 2d 509, 516, 650 N.E. 2d 387, 626 N.Y.S 2d 729 (1995). That is precisely what happened at Collins's trial.[5]

Indeed, not only was there no objection, it is apparent why not. A review of the relevant transcript makes it undeniable that the trial court and the parties were diligently searching for Collin's testimony. No one knew how long that would take, nor did anyone know what else the jury was pondering or saw a reason to delay from that. Plus, the trial court kept the jury advised on the search every step of the way:

> Let me first give an explanation as to the delay. We have – essentially this is the
> only matter that we have had on the calendar today, but in find the evidence these
> things that you're looking for and absolutely entitled to ask for, it takes time to go
> find in the record the information relative to a witness. And then once it's down
> to go through that record to, you know, take out the objections, the arguments,
> you know back and forth, the times when people are talking, talking over each
> other to literally cull it to the point where you have a question and an answer,
> question and an answer. So it's a time consuming process, and that's the reason
> for the delay.

---

[5] Carrying that default forward to federal habeas review, the Second Circuit has held that New York's contemporaneous objection rule is "a firmly established and regularly followed New York procedural rule." *Downs v. Lape*, 657 F.3d 97, 103-04 (2d Cir. 2011); *see Dixon v. Lee*, 2017 WL 4402439, at *8 (E.D.N.Y. Sept. 29, 2017).

Dkt. No. 11-9 at 68. During the afternoon session, the relevant testimony had not yet been culled, and the trial court noted that fact on the record. Dkt. No. 11-9 at 70-71. Indeed, the trial court asked the prosecutor and defense counsel both times if they took any exception to the handling of the read-back request the jury had made in their note. Dkt. No. 11-9 at 69 & 70-72. Defense counsel explicitly did not object. *Id.* In that posture, unless Collins can show either good cause and prejudice or a fundamental miscarriage of justice, the jury deliberations claim is unreviewable in a federal habeas proceeding due to the bar occasioned by petitioner's procedural default in state court. Left to explore before final resolution of claims that appear procedurally defaulted, however, is, as advanced on Collins's second claim, ineffective assistance of counsel. Ineffective assistance can, if established, also satisfy the required objective demonstration of cause that excuses the procedural default of another claim. *Tavarez*, 814 F.3d at 650.

II.     Ineffective Assistance of Counsel

Not only did Collins raise an ineffective assistance of counsel claim, he, as noted, also pins it to his claim regarding the handling of the jury deliberations process. Dkt. No. 1 at 6. The Supreme Court set forth the applicable standards to test such an ineffectiveness claim in *Strickland v. Washington*, holding that a defendant must show that his lawyer's performance was deficient, and, that this "deficient performance prejudiced the defense." 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064-65, 80 L.Ed.2d 674. As is well-settled, the representation must fall below an "objective standard of reasonable." *Id.* at 688, 2064. The New York state standard for assessing ineffectiveness is even more favorable to defendants in not requiring a defendant to "fully satisfy the prejudice test of *Strickland*," but still requiring a showing that his counsel's performance fell below an objective standard of reasonableness. *People v. Caban*, 5 N.Y. 3d 143, 833 N.E. 2d 213, 800 N.Y.S. 2d 70 (2005).

10

There is no doubt, certainly, that Collins raised this claim on direct appeal to the Second Department. Dkt. No. 11 at 28. There is also no doubt that it was adjudicated on the merits by the Appellate Division, which found no merit in it. That decision is now owed AEDPA deference, as it is not "contrary to clearly established federal law" within the meaning of § 2254(d), nor is it an "unreasonable application" of federal law. *Williams*, 529 U.S. at 405-06, 413. Consequently, Collins's claim of ineffective assistance fails. However, thought Collins might find it cold comfort, even if the court were able to afford his claim *de novo* review, it too would not find ineffectiveness. Drilling down on the deficiency specified by Collins, the decision not to object to the trial court's handling of the circumstances presented by the jury notes was not objectively unreasonable. *See, e.g.*, *Bogan v. Bradt*, 2017 WL 2913465 (E.D.N.Y. July 6, 2017) (determining that trial counsel was not ineffective for failing to object to trial court's reading of supplemental jury instructions in response to a note).

This finding is, at the same time, the last nail in the coffin of his trial fairness claim centered on claimed fundamental error in the handling of jury deliberations. Collins simply cannot use his defeated claim of the ineffective assistance of counsel to excuse the procedural default of his jury deliberations claim. *See Tavarez*, 814 F.3d 644 at 650-51. Moreover, he does not even attempt to make a showing as to any other objective cause to excuse his procedural default, whether an external factor to his defense, or futility. *Gutierrez v. Smith*, 702 F.3d 103, 111-12 (2d Cir. 2012). Nor, finally, does Collins attempt to show that there was a fundamental miscarriage of justice, or of a claim of actual innocence. *Dail v. Mortun*, 2018 WL 3973014, at *5 n.3 (E.D.N.Y. Aug. 20, 2018) (noting that habeas petitioner had not made such a claim).

III.    Pre-trial Evidence

The third claim rests on the prosecutor's use, on her cross-examination of Collins and in

her summation of petitioner's failure to report being assaulted by the victims and to give his exculpatory account to police before his arrest and prosecution. Collins contends the use of his silence against him in these ways was error and the trial court committed error by allowing it. Dkt. No. 1 at 7. The People retort that this claim was also procedurally defaulted because Collins failed to contemporaneously object to the aggrieving conduct. In any event, the People argue, that, to the extent that even absent the procedural default, the ruling of the state courts was not an unreasonable application of Supreme Court precedent under AEDPA. Allied to that, they also contend that any error is harmless. Dkt. No. 16 at 43-49.

The record makes manifest, and it is ultimately dispositive, that Collins's lawyer did not object to the cross-examination or summation based on his pre-arrest silence. It is, as the Second Department found on direct appeal, waived, *Collins*, 109 A.D.3d at 482-83, 970 N.Y.S. 2d at 80, making it procedurally defaulted here. This is so, for essentially the same facts and reasons discussed above with respect to petitioner's first claim. In fact, not only is there default by Collins, he makes no demonstration of cause and prejudice, or a fundamental miscarriage of justice, and so New York's procedural bar precludes review of this claim.

Furthermore, substantively, though not before the Court for decision, it is noted that the Supreme Court has clearly held that pre-arrest silence can be used to impeach a defendant, as long as warnings pursuant to *Miranda* have not been given. *Jenkins v. Anderson*, 447 U.S. 231, 100 S. Ct. 2124, 65 L.Ed.2d 86 (1980); *Blackman v. Ercole*, 2009 WL 4891767, at *9 (E.D.N.Y. Dec. 17, 2009). Collins had six months to report any alleged assault on him by the victims of his crimes before he was arrested for those crimes. He did not. Also, on a final and separate note, none of the prosecutor's comments on summation were "so egregious as to violate [Collins's] due process rights." *Brown v. Bradt*, 2013 WL 1636070, at *14 (E.D.N.Y. Mar. 25, 2013).

IV.     Impeachment of Other Witnesses

Collins contends that the trial court improperly limited his lawyer from impeaching

Englesbobb, with a prior inconsistent statement,[6] and then improperly allowed the prosecutor to

rehabilitate Englesbobb and bolster his credibility. Dkt. No. 1 at 9. In response, the People point

out that these claims are not cognizable on federal habeas review, as they rest solely on questions

of New York's law of evidence, and, dispositively, in any case, are procedurally defaulted. Dkt.

No. 16 at 51-62.

The People are essentially correct on both theories. To the extent any claim was

presented by Collins to the Second Department, it brought only evidence claims arising under

state law. Critically, though, when a petitioner can show that an erroneous state evidentiary

ruling stopped him from enjoying a fundamentally fair trial, it is an exception to the rule that

"challenges to state evidentiary rulings" cannot provide the basis for habeas relief, as "it is not

the province of a federal court to re-examine state court determinations on state law." *Dubarry

v. Perez*, 2015 WL 5676531, at *2, *4 (E.D.N.Y. Sept. 24, 2015); *see also Vega v. Walsh*, 669

F.3d 123, 126-27 (2d Cir. 2012). Here, Collins does not make any such showing of fundamental

unfairness.

V.      Excessive Sentence

Collins argues that the trial court's sentence was excessive and unduly harsh. He

specifically laments that the trial court "offered [him] a ten-year sentence mid-trial" then

imposed an 18 year sentence, "even though [the] jury acquitted him of half the charges." Dkt.

---

[6] It appears that defense counsel initially sought to impeach a police officer with a prior
inconsistent statement made by Englesbobb, which would clearly be improper. Dkt. No. 11-
1 at 83.

No. 1 at 10. But, as the People respond, this claim does not, in these circumstances, present a question that a federal habeas court is authorized to review. Dkt. No. 16 at 68-70. That is so because "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *see also Alfini v. Lord*, 245 F. Supp. 2d 493, 502 (E.D.N.Y. 2003). Collins, in short, does not allege that the sentence imposed upon him was outside the permissible range. Indeed, he does not because he cannot. Like his four other claims, then, this claim too does not present a ground upon which the writ may issue.

Conclusion

For the foregoing reasons, a writ of habeas corpus is denied and the petition is dismissed.

Since petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c)(2).

The Court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, *in forma pauperis* is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21, 8 L.Ed.2d 21 (1962).

The Clerk of Court is directed to mail a copy of this Memorandum and Order to petitioner, to enter judgment accordingly, and to close this case.

So Ordered.

Dated: Brooklyn, New York
September 19, 2018

/s/ USDJ ERIC N. VITALIANO
ERIC N. VITALIANO
United States District Judge